UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES L. STEVENSON,<br>Plaintiff,<br>v.<br>LISA PRATT, et al.,<br>Defendants. | Case No. 17-cv-00336-SI<br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTION FOR SUMMARY**<br>**JUDGMENT**<br>Re: Dkt. No. 21 |

**INTRODUCTION**

Charles L. Stevenson filed this *pro se* civil rights action under 42 U.S.C. § 1983 to complain about his medical care while he was incarcerated in the San Francisco County Jail. This action is now before the court for consideration of the motion for summary judgment filed by defendants. For the reasons discussed below, the motion will be granted, and judgment will be entered in defendants' favor.

**BACKGROUND**

The court earlier determined that the *pro se* amended complaint, liberally construed, stated a cognizable claim against Dr. Lisa Pratt and nurse practitioner John Poh for deliberate indifference to Stevenson's serious medical needs based on allegations that they denied Stevenson's requests for: medical care on several occasions, blankets for back support, extra laundry, a cane, physical therapy, chronic pain management, and care for deafness in an ear. Docket No. 9.

The following facts are undisputed unless otherwise noted:

A. The Parties

The events and omissions giving rise to this action occurred during the time period of July 2015 through April 28, 2017, when Stevenson filed his amended complaint (the "relevant time").

During the relevant time, Stevenson was an inmate housed at the San Francisco County Jail at 850 Bryant Street in San Francisco. Stevenson was a pretrial detainee for part of the relevant time and was a convict for another part of the relevant time, although the parties have not pinned down the particular dates on which he had which status.[1]

Defendant Lisa Pratt was a medical doctor employed by the San Francisco Department of Public Health as the Director/Medical Director of Jail Health Services. Docket No. 21-4 at 1.

Defendant John Poh was a licensed nurse practitioner (NP), who had been employed for 20 years by the San Francisco Department of Public Health as a nurse practitioner with Jail Health Services. Docket No. 21-3 at 1. NP Poh provided medical care to Stevenson at the jail.

B. Dr. Pratt Never Treated Stevenson

Dr. Pratt never personally provided medical care to Stevenson and never directly denied him medical care. Docket No. 21-4 at 2; Docket No. 21-1 at 29. Stevenson testified at his deposition that the basis of his claim against Dr. Pratt is "[p]retty much" because she was Poh's supervisor. Docket No. 21-2 at 28.

C. NP Poh's Treatment Of Stevenson

At the San Francisco County Jail, Stevenson had weight gain, mobility issues and chronic back pain. Docket No. 1 at 3. He has two compression fractures in his spine that have been medically documented since 2011. *Id.*

---

[1] Stevenson was in jail for multiple reasons, including serving time after a conviction on an unstated date in 2016 in one case. *See People v. Stevenson*, No. A149253, 2017 WL 6523709 (Cal. Ct. App. Dec. 21, 2017). It is not clear whether Stevenson also was serving time on another conviction at the time that conviction occurred. Stevenson was transferred to San Quentin State Prison in October 2017. Docket No. 21-2 at 7-8 (Stevenson Depo., RT 5-6).

2

NP Poh saw Stevenson for clinical visits on seven dates during Stevenson's incarceration between 2014 and 2017. Docket No. 21-3 at 2. NP Poh also reviewed Stevenson's medical chart on numerous occasions during the relevant period. *Id.* Chart reviews are done to "accomplish tasks such as referring patients to specialists, renewing medications, and generally monitoring a patient's medical care." *Id.*

Stevenson's medical records show that a licensed vocational nurse passing out medications on July 21, 2015, reported that Stevenson was caught for the second time diverting Norco, a narcotic pain medication that he received twice a day, and that he had been given a verbal warning the first time he was caught. Docket No. 22-2 at 52. According to the nurse, Stevenson had not swallowed the pill when it was administered to him at pill call. *Id.* ("Patient use minimal amount of milk to swallow Norcos then sticks out half of his tongue with teeth tightly clenched while Norco is left on back part of tongue") (errors in source). The next day, another nurse wrote in the medical record that the Norco had been discontinued due to Stevenson diverting it and that Stevenson could discuss the matter at his next clinic visit. *Id.* at 53. Stevenson stated in his deposition that the nurse was mistaken in her belief that he was diverting medication. Docket No. 21-2 at 14. (In general at the jail, when a patient is found diverting narcotic medication that has been prescribed to him, "narcotics are discontinued. Such patients are prescribed non-narcotic pain medication in lieu of narcotics." Docket no. 21-4 at 2.)

Although his narcotic pain medication was discontinued after the nurses reported he had diverted narcotics, Stevenson did receive other pain medications. The medical records show that NP Poh prescribed gabapentin, a pain reliever, for Stevenson from July 5, 2015 through December 25, 2016. See Docket No. 22-2 at 12, 18, 26, 36, 45. The medical records also show that NP Poh prescribed acetaminophen for Stevenson from October 2, 2015, through March 29, 2016. Docket No. 22-2 at 20, 25.

After the narcotic pain medication was stopped, Stevenson decided to self-medicate. Docket No. 21-2 at 24. Stevenson stated at his deposition that jailers found "marijuana, heroin, codeine, . . . percocets, all these things that are barbituates or downers" in his cell during searches. *Id.* at 24- 26. One or more of these drugs were found in his cell "[p]robably almost every time they

3

search[ed]" his cell. *Id.* at 25-26. Stevenson sometimes chose not to take the gabapentin prescribed for him at the jail. *Id.* at 27.

As mentioned earlier, NP Poh saw Stevenson several times to treat him. The first visit, on August 14, 2015, apparently was a follow-up to an earlier visit with another health care provider for complaints of blood in his stool. NP Poh ordered a colonoscopy for Stevenson. Docket No. 22-2 at 2. NP Poh reviewed the nurses' notes from July 21-22, 2015, that the Norco previously prescribed to Stevenson had been discontinued after he was caught diverting Norco for a second time. Docket No. 21-3 at 2. The narcotics restriction that was already in place for diverting narcotics remained in place throughout Stevenson's interactions with NP Poh.

NP Poh saw Stevenson on October 2, 2015, November 18, 2015, and March 21, 2016, for routine asthma care. Docket No. 22-2 at 3-9, 12. (Stevenson does not assert any claim that the treatment of his asthma was deficient. Docket No. 21-2 at 30.)

On January 20, 2016, NP Poh saw Stevenson for Stevenson's request for stronger medication for bicep pain after Stevenson had declined to wait for his appointment the preceding day. Docket No. 22-2 at 10, 29, 30. At this time, Stevenson was receiving gabapentin and acetaminophen. NP Poh saw Stevenson a month later for "education" after an examination or x-ray of the upper arm showed no evidence of fracture or soft tissue swelling or calcifications. *Id.* at 11, 32.

Stevenson apparently was scheduled to see NP Poh on May 12, 2016, but Stevenson refused to see him. *Id.* at 13.

The last time NP Poh saw Stevenson was on September 13, 2016, to address his asthma and complaints of chronic back pain and wrist pain. *Id.* at 14. NP Poh determined to refer Stevenson to behavioral health services for his reported panic attacks that appeared to contribute to his asthmatic symptoms. In response to Stevenson's inquiry about a physical therapy appointment, Poh could not find any record mentioning physical therapy but thought Stevenson would be a "good candidate" for physical therapy. *Id.* at 14-15. Later that week, Poh ordered physical therapy to "eval[uate] and treat for chronic low back pain." *Id.* at 44. Poh also examined Stevenson's wrists on September 13; the result was a "normal exam, but can check a film. . . also reviewed xray of left arm forearm and upper arm, no bony injury seen, grossly nl exam." *Id.* at 14. On September 16, Poh reviewed

4

1  a September 15 wrist x-ray that was normal and without evidence of fracture or soft tissue swelling.
2  *Id.* at 42.

On November 10, 2016, Stevenson was seen by a physical therapist, who recommended specified daily exercises and a follow-up in a month. *Id.* at 55-58. There is no evidence whether or not the follow-up appointment occurred. There also is no evidence that NP Poh was aware of a request for a follow-up appointment: Poh did not even deal with Stevenson after September 13, 2016. (Stevenson had requested another health care provider due to a "conflict of interest" with Poh, but it is not clear whether that request led to the end of the contacts with Poh.)

Stevenson testified at his deposition that he unsuccessfully asked Poh for an extra-blanket chrono (i.e., a permission slip) for back support to sleep better, although Stevenson was not sure when he asked for it or exactly what Poh said. Docket No. 21-2 at 22. Stevenson also testified that he unsuccessfully asked Poh for extra underwear, extra laundry, and a chrono for a lower bunk. *Id.* at 19, 49. The medical records do not mention any of these requests.

At his deposition, Stevenson testified that he did not recall any conversations with Poh about a cane. *Id.* at 23. He also testified that he does not assert a claim that his back tumor was not treated. *Id.* at 29-31.

**VENUE AND JURISDICTION**

Venue is proper in the Northern District of California under 28 U.S.C. § 1391 because the events or omissions giving rise to the complaint occurred in San Francisco County, located in the Northern District. See 28 U.S.C. §§ 84, 1391(b). This court has federal question jurisdiction over this action under 42 U.S.C. § 1983. See 28 U.S.C. § 1331.

**LEGAL STANDARD**

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

1   case, and on which that party will bear the burden of proof at trial . . . since a complete failure of
2   proof concerning an essential element of the nonmoving party's case necessarily renders all other
3   facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it
4   might affect the outcome of the suit under governing law, and a dispute about a material fact is
5   genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving
6   party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his or her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citations omitted).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald,* 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Here, Stevenson's original complaint was signed under penalty of perjury and the facts therein are considered as evidence for purposes of deciding the pending motion.

The court's function on a summary judgment motion is not to make credibility determinations nor to weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *Id*. at 631.

**DISCUSSION**

A. <u>Mental State Required for Medical Care Claims from Inmates</u>

Inadequate medical care of an incarcerated person may violate his federal constitutional rights. The source of the right differs depending on whether the incarcerated person is a pretrial detainee or a convicted prisoner at the time of the alleged violation. The Eighth Amendment's Cruel and Unusual Punishments Clause is the source of the relevant right when the plaintiff is a convicted prisoner, and the Fourteenth Amendment's Due Process Clause is the source of the relevant right when the plaintiff is a pretrial detainee. *See Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018); *see also Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979) (Due Process Clause is relied on for pretrial detainees' claims because the "'State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.'"). Under both the Due Process Clause and the Eighth Amendment, one of the key issues is whether the state actor has acted with "deliberate indifference" to a medical need. For many years, the standards under both constitutional provisions were treated as the same and courts applied a subjective deliberate-indifference standard. *See Gordon*, 888 F.3d at 1122-23. Under that subjective deliberate-indifference standard, a defendant was liable only if he "[knew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have drawn] the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (articulating the deliberate-indifference standard).

The use of a single deliberate-indifference standard has changed in the Ninth Circuit and several other circuits. *See Estate of Vallina v. County of Teller Sheriff's Office*, 2018 WL 6331595, at *2 (10th Cir. Dec. 4, 2018) (collecting cases). Now, the deliberate-indifference standard that applies to a pretrial detainee's claim is an *objective* one rather than the subjective one that continues to apply to a convicted prisoner's claim.

> [T]he elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures

7

> to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon*, 888 F.3d at 1125. For the third element, the defendant's conduct must be objectively unreasonable, "a test that will necessarily 'turn[] on the facts and circumstances of each particular case.'" *Id.* (alteration in original) (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016)). "[T]he plaintiff must 'prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* (quoting *Castro*, 833 F.3d at 1071). Under this test, "[t]here is no separate inquiry into an officer's subjective state of mind." *Horton v. City of Santa Maria*, No. 15-56339, slip op. at 17 (9th Cir. Feb. 1, 2019).[2]

B. Analysis of Stevenson's Claims

As mentioned in the statements of facts, *see* footnote 1 and accompanying text, Stevenson was a pretrial detainee for part of the relevant time and a convict for part of the relevant time, but the dates on which he was in which status are not identified by the parties, much less shown to be undisputed facts.[3] For purposes of ruling on the motion for summary judgment, the court will assume that Stevenson was a pretrial detainee during all of the relevant time. If defendants are entitled to summary judgment when the objective deliberate-indifference standard is applied, it follows that they would be entitled to summary judgment when the subjective deliberate-indifference standard is applied. *See generally Castro*, 833 F.3d at 1071 n.4.

---

[2] In *Horton,* the Ninth Circuit used the old, *subjective*, deliberate-indifference standard to evaluate whether defendants were entitled to qualified immunity against a pretrial detainee's inadequate-medical-care and failure-to-protect claims because the relevant events took place in 2012, years before the Ninth Circuit announced the new objective deliberate indifference test. *Horton*, slip op. at 11-12. To determine whether the defendants were entitled to qualified immunity, the court had to look at the law as it existed at the time of the relevant events. The "clearly established law" for qualified immunity purposes was the subjective deliberate-indifference test followed by courts at the time of the events in that case. *Id.* at 12. Here, defendants do not assert any entitlement to qualified immunity, so this court does not consider the "clearly established law" question.

[3] Not only did defendants not establish the dates on which Stevenson was a pretrial detainee and on which he was a convict, they ignored the subjective versus objective deliberate indifference issue entirely. This was careless, particularly given the court's efforts to flag this very issue in the order of dismissal with leave to amend and the order of service. Docket No. 3 at 3-4 & n.1; Docket No. 9 at 3 n.1.

Turning now to the evidence in this case, no reasonable jury could find in favor of Stevenson on his medical care claims. As to Dr. Pratt, there is no evidence that she personally provided or denied medical care to Stevenson. Stevenson admitted that his claim against her is "[p]retty much" based on her role as NP Poh's supervisor. Docket No. 21-2 at 28. Her role as NP Poh's supervisor is not alone enough to support liability on a claim under 42 U.S.C. § 1983 because liability must rest "upon a showing of personal participation" by the defendant and cannot rest on a respondeat superior theory. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "A supervisor is only liable for constitutional violations of [her] subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Id.* Stevenson makes no such showing. Dr. Pratt therefore is entitled to judgment as a matter of law in her favor.

NP Poh also is entitled to judgment as a matter of law on the claims against him. With regard to the claim that NP Poh was deliberately indifferent in response to Stevenson's requests for pain management, the undisputed evidence shows that Stevenson's narcotic pain medication was stopped after non-defendant[4] nurses reported that Stevenson had been caught diverting his narcotic pain medication; NP Poh was aware of the nurses' reports; and NP Poh ordered non-narcotic pain medications throughout the relevant time. Viewing the evidence and reasonable inferences in the light most favorable to Stevenson, no reasonable trier of fact could conclude that a reasonable official in NP Poh's position would have appreciated that prescribing non-narcotic pain medications in place of narcotic pain medications would pose a substantial risk of serious harm to Stevenson. Nor could any reasonable trier of fact conclude that NP Poh's decision caused injury to Stevenson.

Next, viewing the evidence in the light most favorable to Stevenson, a jury could conclude that NP Poh chose to deny him an extra blanket for back support, a lower bunk, and extra laundry and extra underwear for bowel movements. *Cf. Castro*, 833 F.3d at 1070 (when the official engages

---

[4] Stevenson added the names of the nurses to the caption of this case in an opposition brief (Docket Nos. 26 and 26-1), but Stevenson did not move to amend his amended complaint and one cannot add new defendants at this late stage in this manner. Moreover, many months ago Stevenson was instructed that, if he wanted to add individual defendants, he needed to identify them and allege what each had done or failed to do that caused a violation of his rights, *see* Docket No. 3 at 6, and his amended complaint filed thereafter did not mention the nurses or their conduct. If he wishes to pursue a claim against the nurses, he may file a separate action, although it is not clear what claim(s) he could state against the nurses for their actions.

in inaction rather than action, the issue is whether the defendant's conduct was intentional; "[f]or example, if the claim relates to housing two individuals together, the inquiry at this step would be whether the placement decision was intentional"). Even on this record, however, no reasonable trier of fact could conclude that the absence of these items put Stevenson at a substantial risk of serious harm that could have been eliminated through reasonable and available measures that NP Poh did not take, or that the failure to take those measures caused injury to Stevenson. *See Horton*, slip op. at 17 (under objective test, question is "whether there was a 'substantial risk of serious harm to the plaintiff that could have been eliminated through reasonable and available measures that the officer did not take, thus causing the injury that the plaintiff suffered'").

With regard to the alleged denial of care for deafness in an ear and denial of a cane, the undisputed evidence shows that NP Poh was unaware of either need. There is absolutely no evidence that Poh was aware of Stevenson's hearing problems or any request for hearing care. The only evidence about the cane is Stevenson's admission at his deposition that he never discussed with NP Poh his desire to have a cane. On this record, no reasonable trier of fact could conclude: (a) that NP Poh made any intentional decision with respect to hearing problems or a cane for Stevenson; (b) that a reasonable official in these circumstances would have appreciated that not providing care for hearing problems or a cane posed a high degree of risk of Stevenson suffering serious harm; or (c) that Poh's conduct caused any injury to Stevenson.

Finally, with regard to the alleged denial of physical therapy, the only evidence in the record undermines Stevenson's claim that NP Poh denied his request for physical therapy. The undisputed evidence shows that Stevenson and NP Poh discussed physical therapy only once, that NP Poh thought Stevenson would be a good candidate for physical therapy even though Poh found no mention of physical therapy in the medical records, and that NP Poh ordered physical therapy within a couple of days of the appointment at which the subject was first raised. Viewing the evidence and reasonable inferences therefrom in the light most favorable to Stevenson, no reasonable jury could conclude that a reasonable official in these circumstances would have appreciated that referring the patient for physical therapy posed a high degree of risk of Stevenson suffering serious harm or that Poh's conduct caused any injury to Stevenson. There is no evidence in the record that NP Poh ever

10

learned of the physical therapist's later recommendation for a follow-up appointment, that NP Poh was still in charge of Stevenson's care, or that a follow-up physical therapy appointment did not occur. Viewing the evidence and reasonable inferences therefrom in the light most favorable to Stevenson, no reasonable trier of fact could conclude that NP Poh made any intentional decision with respect to the physical therapist's recommendation for a follow-up appointment or that Stevenson suffered any injury as a result of not having a follow-up physical therapy appointment (if one did not occur).

The court considers whether any of Stevenson's allegations and statements warrant rejection of defendants' motion for summary judgment and concludes that they do not. First, Stevenson devotes many pages to arguing that he should not have been placed on a no-narcotics status. He argues fervently that the nurses' reports that he was diverting Norco were improper because, for example, their beliefs that he diverted Norco are mere suspicions, one nurse failed to comply with a jail requirement that a nurse must be accompanied by a deputy to dispense pills, there were no corroborating witnesses, no rule violation report was written, and he (Stevenson) did not get a hearing with due process to determine whether he had diverted medication. *See* Docket Nos. 26 and 29. But these arguments are irrelevant to his current claims. As mentioned above, only NP Poh treated him, and NP Poh saw the records stating that Stevenson had been caught twice diverting his Norco and consequently had been placed on a no-narcotics status. NP Poh had no duty to further investigate the matter or to ignore the nurses' notes about the Norco diversion. The fact that Stevenson disputes whether he diverted Norco and whether he should have been put on a no-narcotics status does not show that NP Poh did anything wrong in relying on the information that was in Stevenson's medical records.

Second, Stevenson continues to try to forestall the court's consideration of the summary judgment motion, even though he has had ample opportunity to do discovery and prepare an opposition. In his opposition and his reply to defendants' reply, Stevenson argues that there are discovery materials "yet to be explored by way of an investigation" and asks for appointment of counsel to do discovery. Docket Nos. 29, 31. These are the same arguments the court rejected months ago. Back in June, Stevenson requested appointment of counsel to do discovery for him.

The court denied the request, explaining that exceptional circumstances requiring the appointment of counsel were not evident. "The claims presented do not appear to have a high likelihood of success on the merits and plaintiff has not shown a difficulty articulating his claims. Like many other unrepresented prisoner-plaintiffs, plaintiff appears capable of prosecuting his own action and doing his own discovery." Docket No. 28. In that same order, written more than seven months ago, the court declined to continue the motion for summary judgment, observing that Stevenson had "not described his discovery efforts, if any, in the eight months since the court authorized the parties to engage in discovery, *see* Docket No. 9 at 8, or in the two months since defendants filed their motion for summary judgment. He also has not identified any particular evidence that he believes he will find in discovery to enable him to withstand defendants' motion for summary judgment." Docket No. 28. Nonetheless, the court gave plaintiff an extra six weeks to file his opposition with the caution that no further extension of the deadline should be expected. *Id.* Stevenson unwisely returns with an opposition (Docket No. 29) and reply (Docket No. 31) that make the same arguments the court already rejected. The requests for appointment of counsel to do discovery are denied for the same reasons stated in the June 28, 2018, order denying request for continuance and counsel. The October 6, 2017, order of service authorized the parties to do discovery and explicitly informed Stevenson that he had to do his own discovery, Docket No. 9 at 6, 8; the court ordered defendants to send to Stevenson a copy of the sealed documents they had filed, Docket No. 24 at 2; the court informed Stevenson that this action was limited to his allegations against Poh and Pratt, and that he could file a new action if he wanted to assert claims against other people for other wrongs, *id.*; and on June 28, 2018, the court denied Stevenson's request for counsel to do discovery for him, Docket No. 28. Stevenson has had enough notice that he had to do discovery and to file an opposition, yet he has not provided any evidence to contradict defendants' evidence or provided any reason to justify further delay in considering defendants' motion for summary judgment.

Finally, Stevenson's opposition filings (Docket Nos. 26, 29 and 31) also do not warrant relief under Federal Rule of Civil Procedure 56(d), which allows for relief when a party against whom summary judgment is sought "cannot present facts essential to justify its opposition." "The burden is on the party seeking a Rule 56(d) continuance 'to proffer sufficient facts to show that the evidence

12

sought exists, and that it would prevent summary judgment.'" *Atay v. County of Maui*, 842 F.3d 688, 698 (9th Cir. 2016). Stevenson makes no showing that any particular evidence exists or that it would allow him to withstand summary judgment. His generalized statements that his cause would be helped if someone looks at the medical records and does other discovery are insufficient to show that granting him more time would result in him being able to successfully oppose the summary judgment motion.

Defendants are entitled to summary judgment on Stevenson's claims against them. The court has discussed the claims under the Due Process Clause because that provision provides a more prisoner friendly framework for claims of inadequate medical care. If a provider is entitled to judgment as a matter of law on a medical care claim asserted under the Due Process Claim, it follows that he is entitled to judgment under the Eighth Amendment for the same alleged acts and omissions. *See generally Castro*, 833 F.3d at 1071 n.4 (rejecting argument that the objective standard might be underinclusive on the state of mind requirements for deliberate indifference prong). Even if one did a separate analysis of the Eighth Amendment claim, no reasonable jury could find in Stevenson's favor because he has failed to show a triable issue that, in responding to his medical needs, either defendant "[knew] of and disregard[ed] an excessive risk" to his health. *Farmer*, 511 U.S. at 837. Defendants are entitled to summary judgment on the Due Process Clause and Eighth Amendment claims for inadequate medical care.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED. Docket No. 21. Defendants are entitled to judgment as a matter of law on plaintiff's claims against them. The clerk will enter judgment and close the file.

**IT IS SO ORDERED**.

Dated: February 14, 2019

_____
SUSAN ILLSTON
United States District Judge

13